(No. 13270.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS POWERS, Plaintiff in Error.

*Opinion filed June 16, 1920.*

1, CRIMINAL LAW—*what is meant by aiding, abetting or assisting in a crime.* Aiding, abetting or assisting in the perpetration of a crime means some conduct of an affirmative nature, and mere negative acquiescence is not sufficient to constitute a person a principal, but there must be something in the evidence showing a design to incite or in some manner aid, abet or assist in the commission of the crime.

2. SAME—*defendant need not take active part in crime to be a principal if he assents to a common design.* The failure of the defendant to take active measures to prevent a robbery by his companions will not make him a principal, but if the circumstances show a common design to do the unlawful act, to which all of them assented, whatever is done in furtherance of the original design is the act of all, and it is not necessary that each one shall take an active part in the commission of the crime.

3. SAME—*when evidence is sufficient to prove defendant a principal in committing a robbery.* Evidence that the defendant and his companions met on a street corner about midnight; that they got into an automobile, the defendant taking the front seat, on which there was a revolver lying between him and the driver; that after driving awhile they observed a pedestrian and one of the parties in the back seat proposed to "get him;" that the car was immediately stopped, the revolver taken from the front seat and the pedestrian robbed by the parties in the back seat, is sufficient to prove the defendant a principal, where it also shows that he shared in the proceeds and was afterwards arrested in a rooming house with two of his companions.

4. SAME—*when statement in argument of State's attorney will not justify reversal of conviction.* Where the issue is whether the defendant was a principal in the commission of a robbery by his

companions, a statement in the argument of the State's attorney, after reciting the facts, that the evidence showed the defendant consented to everything that was done, is not sufficient to justify a reversal of a judgment of conviction, where the objection that there was no evidence of·consent is overruled by the court with the remark that the jury had heard the evidence and where the evidence tends to show more than mere negative acquiescence by the · defendant.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

EUGENE C. O'REILLY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, ALBERT D. RODENBERG, and EDWARD E. WILSON, for the People.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiff in error, Louis Powers, was charged, jointly with Frank Miller, Roy LaPrairie, Harry Krenmyer and· Ralph Escher, in the criminal court of Cook county, with robbing Louis E. Reinhart. The plaintiff in ·error was tried, together with Miller and LaPrairie, and he was found guilty and sentenced to the penitentiary. The errors assigned are insufficiency of the evidence to sustain the verdict and improper remarks of the State's attorney in his closing argument to the jury.

The evidence for the People·consisted of the testimony of Reinhart, Escher, Krenmyer and a detective. Their testimony was not contradicted, and the question submitted to this court is whether it was sufficient to justify the verdict.

At about 12:15 o'clock on Saturday morning, August 8, 1919, Louis .E. Reinhart was on Huron street, in Chicago, going home, and as he reached Forty-eighth street a yellow racing car stopped and three young men got out· of the car and presented a revolver and told him to throw

up his hands. They took his wallet, containing $12 in currency and some cards, but returned the cards, and he could not identify any of the men. Escher and Krenmyer were not on trial and their testimony was to this effect: At about 11 o'clock at night on August 7, 1919, Miller, La-Prairie, Krenmyer, Escher and Powers met at Madison and Laflin streets and Krenmyer suggested that they take a ride in his yellow racing car. Krenmyer drove the car and Powers sat by him while the others occupied a back seat. There was a revolver on the seat between Krenmyer and Powers. The first thing that was said about holding anybody up was when the car reached Forty-eighth and Huron streets and they saw Reinhart going along the street. Miller said, "Lets get him," and Krenmyer stopped the car. Miller reached over and took the revolver from the front seat, and he, LaPrairie and Escher got out of the car, robbed Reinhart and came back, saying that they got $12. Krenmyer and Powers remained in the car during the robbery, about fifty feet from the place where the robbery took place. The money was divided among the five the next day. A detective sergeant arrested the defendants three days afterward at a rooming house and found a revolver under the pillow on the bed, and there were three bullets in it. The plaintiff in error did not testify, and his counsel submitted the case on the testimony of two persons that his reputation was good as a peaceable and law-abiding citizen.

Aiding, abetting or assisting in the perpetration of a crime means some conduct of an affirmative nature, and mere negative acquiescence is not sufficient to constitute a person a principal. There must be something in the evidence showing a design to incite or in some manner aid, abet or assist in the commission of the crime. (*White* v. *People,* 81 Ill. 333; *White* v. *People,* 139 id. 143; *Jones* v. *People,* 166 id. 264; *Crosby* v. *People,* 189 id. 298; *People* v. *Novick,* 265 id. 436.) The mere presence of plaintiff in error in the car and a failure to take active measures

to prevent the robbery would not make him a principal, but if the parties had a common design to do the unlawful act, then, in contemplation of law, whatever some of them did in furtherance of the original design was the act of all and each would be guilty of the crime. Circumstances may show that there is in such case a common design to which all assented, and where that is so it is not necessary that each one shall take an active part in the commission of the crime. (*People* v. *Marx*, 291 Ill. 40; *People* v. *Allegretti*, id. 364.) The argument is that if the evidence showed any offense it merely showed that the plaintiff in error was informed of the crime after it was committed and may have been guilty as an accessory after the fact. But the evidence went much further than that. The facts that when Miller saw Reinhart and proposed to "get him" the car was immediately stopped and the revolver procured from the seat between the plaintiff in error and Krenmyer, the association of the parties at the time and in the rooming house, and the division of the proceeds of the robbery, raised a justifiable inference of a common understanding and that what was done by those who actively took part in the robbery was contemplated when the five started out in the racing car. The court did not err in refusing to set aside the verdict.

In the closing argument of the State's attorney he said that counsel had argued that there was no evidence plaintiff in error took any part or consented in any way, and in reply he recited the facts proved by the evidence, which, he said, showed that plaintiff in error consented to everything that was done, thereby being guilty as principal. Counsel for plaintiff in error objected to the use of the word "consented," because there was no evidence as to plaintiff in error consenting. The objection was overruled, with the statement that the jury had heard the evidence. The objection was not that consent was not sufficient, but that there was no evidence of consent, to which the court replied

that the jury were to pass on the evidence. The State's attorney was not giving the law to the jury but stating facts as to the participation of plaintiff in error in the crime, and it does not appear what, if any, instructions were given to the jury concerning the law, as no instructions are preserved. What was said would not justify a reversal of the judgment, and it was not unreasonable for the jury to conclude that there was something more than mere negative acquiescence on the part of the plaintiff in error.

The judgment is affirmed.    *Judgment affirmed.*