THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM DESTEFANO, Plaintiff in Error.

*Opinion filed December 20, 1928.*

UNGARO, BLUMENTHAL, & ROMANO, and ROLAND V. LIBONATI, (LOUIS GREENBERG, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and G. E. NELSON, (JOHN HOLMAN, and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, with Ralph Orlando, was indicted and tried in the criminal court of Cook county for the crime of forcible rape committed upon Frances Brooks. The jury fixed the punishment of plaintiff in error at three years' imprisonment in the penitentiary and that of Orlando at ten years. Plaintiff in error brings the cause here for review.

The testimony of the complaining witness revealed a most revolting crime. She testified that she was seventeen years of age at the time of the trial; that on the 19th of September, 1927, she was living with a cousin in the city of Chicago; that on the afternoon of that day she went to

a theatre on Halsted street with a friend named Joe Ladda; that after the theatre they went to a restaurant and then to her cousin's house, where they stayed until 9:30, when they again went to a theatre and after the performance went back to her cousin's house, where they stood in front and talked for a while; that she knocked on the door but no one answered; that she and Ladda went back to Halsted street; that it was then about two o'clock in the morning, and it was her intention to take a room at a hotel, as her cousin was not at home; that about the time they reached the hotel two men came running across the street to them, one of whom she identified as Orlando; that plaintiff in error was not there at that time; that they asked her and her friend how far north they were going, and receiving the reply that they were going a couple blocks, Orlando said to her friend, "You leave her go," which he refused to do, and that Orlando hit him in the head and also struck her on the back of the head; that Ladda, upon being struck, ran away and left them; that she also ran to a hotel, where she found a man cleaning windows and asked him if she could get a room in the hotel; that he replied that she could not; that she did not know what to do and commenced crying; that at that time a man drove up in an automobile and called to her; that she went over to the automobile and got into it and she and the man started to find her boy friend; that she had told him that he was her brother; that as they were going west on Halsted street two men jumped on the running-board and got into the car; that one of them was Orlando; that Orlando told the driver he was going to shoot; that the driver turned and said something to Orlando and witness started to get out of the car, and Orlando said to one of the men, "Get in front before she jumps;" that Orlando got in the front seat and told her to keep still; that they drove into a dark street and parked; that she was crying and told them that Ladda was her brother, and they told her they would find him for her;

that Orlando got out of the car and said to her, "Come on and get out and we will go and get your brother," but she refused to get out but told him she was going to pay the driver and he would take her home; that Orlando said, "This man has got to go to work; he is married and has no time to fool with you;" that she would not get out of the car and Orlando took hold of her hands and pulled her, but she held on to the steering wheel and started screaming; that Orlando hit her in the face and she continued to scream; that he pulled her over to the back seat, with his hands on her throat; that she was bleeding at the mouth and let go of the steering wheel and Orlando pulled her out of the car; that two other men then came with another car and they carried her to the second car and took her in between some buildings; that there were six or seven men there; that six of them raped her, the first of whom was Orlando; that she struggled with these men as long as she could but got weak afterwards and couldn't fight any longer; that at that time she did not see plaintiff in error there, but that he came and got in the car with her and the police officer came and found them there; that when plaintiff in error first got into the car he "told me he was the last fellow and said they were going to take me home; he asked me what I was crying about; I told him my brother was lost and I wanted to find him; he said the other fellows would find my brother for me and that he was the last fellow and he would take me home," and that he was attempting to rape her when the police officer came; that his private parts were exposed and that she told him to leave her alone. She also testified that when the police officers came she was bleeding from the mouth and also from her private parts and that her coat and underwear were torn.

John J. Ryan, a police officer, testified that he got a telephone call at the station and went to Forquer street, a few doors east of Halsted street, to a club room located there. There were six men in front of it. He went into a blind

alley at the rear of a building near by and saw a car standing there. The back shade was down. He opened the door and caught plaintiff in error on top of complaining witness. His trousers were open and the girl's dress was up. She was bleeding at the mouth, her face was swollen and blood was coming from her mouth; "that she was sort of dopy and dizzy."

Richard Kelly, also a police officer, testified that he was called to this spot about 3:30 in the morning; that when he got to a point on Forquer street, about one-half block east of Halsted street, there was a gang standing in front of a club there; that he went back in the alley and found plaintiff in error and the complaining witness; that they went back to the club building and the men ran away; that they found Orlando in an open-air fruit stand and took him to the station; that the complaining witness later identified him. Samuel F. Maddigan, a police officer, gave testimony to the same effect. He testified that complaining witness was bleeding at the mouth, seemed to be very nervous and was crying.

Plaintiff in error contends that two male persons cannot be jointly indicted and tried for the distinct crime of rape on one prosecuting witness, and cites in support of this contention *People* v. *Richie,* 317 Ill. 551. The facts in that case are not similar to those in the case at bar. The crimes charged there occurred at different times and places. This court has frequently held that while several persons can not at the same time commit one offense of rape upon one woman, yet several defendants may be indicted for the crime as accessories before the fact, and such conviction will be sustained where the evidence is sufficient to show that each of the defendants, in furtherance of a common design, either perpetrated the crime or were present aiding or abetting in its perpetration. (*People* v. *Bogue,* 319 Ill. 294; *People* v. *Marx,* 291 id. 40; *Barrett* v. *People,* 220 id. 304.) Where the defendants charged with the crime

are shown to have a common design to commit it, all will be held guilty. (*People* v. *Powers,* 293 Ill. 600.) While a crime of the character here charged cannot be committed by all defendants at the same time, yet where the evidence tends to show a concert and agreement in purpose and action the People may proceed against them all under one indictment. *People* v. *Marx, supra; Barrett* v. *People, supra.*

The testimony for the People tends to show that plaintiff in error was jointly guilty with the other six men. He was caught in the act of attempting to rape the complaining witness. He told her he was the last one. He told her that they were going to take her home and that the "fellows" would find her brother. It is evident that he referred to those who had already attacked her. He was likewise a frequent visitor at the club on Forquer street. He came directly from the club to the automobile, where he attempted to attack the complaining witness when the officer caught him. When the officers arrived there were six men in front of the club. Orlando was one of them. The screaming of this girl aroused the neighborhood. Plaintiff in error must have heard it and must have known what was going on. The jury were justified in finding him guilty. While the evidence does not show that he completed the crime of actual rape upon the complaining witness, yet under the rule stated, where, as here, the evidence tends to show that there was a common design to commit the crime of rape on the complaining witness, the act of one was therefore the act of all and all are equally guilty. *People* v. *Bogue, supra; People* v. *Powers, supra.*

Counsel in their briefs argue that this court would be justified in adopting the view that complaining witness was a prostitute plying her trade, and that, realizing that she would be found guilty of such an offense, after the arrival of the officers she made the complaint that she was raped. There is not the slightest shred of evidence in this record to justify such a holding. Such a defense appears to have

originated in the minds of counsel for the defendant. No reason would appear why, if such was the case, complaining witness would be beaten and her clothes torn and that she should be crying when found by the police.

The record in this case justifies the conviction of plaintiff in error, and the judgment will be affirmed.

*Judgment affirmed.*