(No. 22231.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT DALTON, Plaintiff in Error.

*Opinion filed February 23, 1934.*

FINNEY & WHITESIDE, for plaintiff in error.

OTTO KERNER, Attorney General, JOHN R. KANE, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

The plaintiff in error, Robert Dalton, and Browder Price and Henry Mayberry, were indicted in the circuit court of Saline county for the murder of William Smith.

They were jointly tried, were found guilty of murder and sentenced to fourteen years in the penitentiary. This writ of error seeks a review of that judgment of conviction as to Dalton.

The circumstances of the killing are substantially as follows: From early in the afternoon of Sunday, May 7, 1933, until the homicide, Dalton was engaged in a card game with the deceased, William Smith, in a building or suite of rooms known as the Ulyes Kent place, which is in the east end of the city of Harrisburg, Illinois. The building where the killing occurred faces Walnut street to the south and has only two rooms—a long room on the south and a small room on the north. The evidence shows there was nothing in the large room but that in the small room there was a dining table, with chairs and stools placed around the table, and also a stove and a crap table. On the south side of the building there was a door, which had been locked or nailed up. There was also a door in the northwest corner of the rear room leading to the outside and back of the building. A short distance back of the scene of the homicide was a long store building which was empty, and back of that building a shack where the defendants Mayberry and Price lived. About 8:45 P. M. on the day in question, while Dalton was playing cards with Smith, someone pushed open the door and shot a large portion of Smith's head off with a shot-gun, killing him instantly, and immediately ran away. Mayberry and Price were seen running from the scene of the homicide to their house. The killing was accomplished by a twelve-gauge double-barreled shot-gun, which was later proved to have been the property of Raymond Bowen and by Bowen left at the home of Dalton several days prior to the homicide.

The indictment consisted of three counts, charging the defendants, jointly, with having committed the murder, but, so far as the record shows, the conviction of the plaintiff

in error was based upon a theory that he was guilty as a principal through being an accessory before the fact or a joint conspirator with the other two defendants.

So far as the plaintiff in error is concerned, his conviction, if it is to be sustained at all, must find its support in the testimony of Hal Bynum, a deputy sheriff of Saline county, as there is no other competent evidence in the record to connect the plaintiff in error with the crime. Bynum's testimony, in so far as it concerns the plaintiff in error, and omitting such portions as apply to the defendants who have not joined in this writ of error, was substantially as follows: That at about 8:45 P. M. he received a call and went to the east part of Harrisburg, to the house known as the Ulyes Kent place; that the room where the body was found was about 14 by 16 feet; that in this room was a dining table with a cover on it, used in playing cards, and that there were cards on the table; that there was also a crap table against the wall, and that Smith's body was near the south wall of the north room, lying south of the table, with his feet under the table. Bynum further testified that there were chairs and stools placed around the table and that Smith was dead when he arrived; that Smith had a shot-gun wound in the left side of his head, and that there was a deck of cards and some of Smith's teeth on the table; that outside of the house there was an old Buick car which had been in the possession of the plaintiff in error, and that there was no weapon near Smith's body. The officer further testified that after leaving the place where the homicide took place he went to the home of Mrs. Dora Toops, where he asked for Dalton; Mrs. Toops informed him that Dalton was there, and witness went in and found Dalton lying on a cot; that Dalton said, "Is that you, Hal?" and witness said, "Yes;" that Dalton then said, "Is that fellow dead?" and witness replied, "Who do you mean? Bill Smith?" and Dalton said, "Yes;" that witness then said, "Sure; he never knew

what hit him;" that Dalton said, "I guess you are after me," and witness said, "Yes." Witness then proceeded to relate that plaintiff in error told him he did not know who did the killing; that he was in there playing cards with Smith; that he had been drinking some liquor, and the first thing he knew someone pushed the door open and shot Smith; that whoever it was shot him with a shot-gun; that he (the plaintiff in error) jumped up and tried to get out the front of the building but that it had been locked or nailed up, and that he then turned and went out the north door; that there was a shot-gun lying on top of his car and he threw it out in the weeds and that he would show witness where it was; that witness and the other officers found it where the plaintiff in error said it would be. He further testified that the plaintiff in error had identified the gun as one that Raymond Bowen had brought to his house several days before and that Price and Mayberry had taken it away from his house several days prior to the killing. Witness further testified that the plaintiff in error told him that Price and Mayberry had come up there and wanted to borrow the gun and that he told them where it was, and that they told him they were going to get Bill Smith.

This testimony is set forth at some length because it is the only competent evidence in the entire record tending to show that the plaintiff in error was in any way connected with the crime in question. The testimony and the statements of the co-defendants could in some aspects be construed as indicating that when the gun was borrowed they gave the plaintiff in error reasonable ground to suspect the purpose for which they might wish to use it, but this is the strongest construction which can possibly be placed on any of their statements, whereas their direct and positive testimony was to the effect that the plaintiff in error did not know that they were going to kill Smith or in any way join in their plans.

The indictment in this case, as above pointed out, charges the plaintiff in error, together with the other two defendants jointly, as principal, with the murder of William Smith. There is no count charging conspiracy to commit murder. It therefore follows, inasmuch as the record shows the plaintiff in error did not himself actually do the killing, that if he is to be convicted at all it must be by proving him to be an accessory and therefore guilty as principal. The statute in regard to the guilt of an accessory is as follows: "An accessory is he who stands by, and aids, abets or assists, or who, not being present, aiding, abetting or assisting, hath advised, encouraged, aided or abetted the perpetration of the crime. He who thus aids, abets, assists, advises or encourages, shall be considered as principal, and punished accordingly." (Cahill's Stat. 1933, chap. 38, par. 611.) To be guilty as a principal under this statute one must be present and participate in such a way that it may be said he either aided, abetted or assisted in the commission of the crime, (*People* v. *Marx,* 291 Ill. 40; *People* v. *Richie,* 317 id. 551;) or, not being present, has advised, encouraged, aided or abetted the perpetration of the crime.

It is argued that the plaintiff in error knew that his co-defendants intended to kill Smith at the time they borrowed the gun and that this might make him an accessory. Not only does our statutory definition of an accessory prevent any such construction but it was not so at common law. 1 Hale's P. C. 616; *People* v. *Barnes,* 311 Ill. 559.

Upon the trial of the case the court erroneously gave an instruction to the jury orally instead of in writing, and erroneously gave certain other instructions based upon a theory of conspiracy which was not proved. It is unnecessary to discuss these errors in detail.

The judgment of the circuit court of Saline county is reversed and the cause is remanded.

*Reversed and remanded.*