**People of the State of Illinois, Plaintiff-Appellee,
v. Emile Washington, Defendant-Appellant.**

**Gen. No. 52,986.**

First District, Fourth Division.
February 25, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Kavanaugh, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

Defendant was charged with rape. A jury convicted him; the court imposed a sentence of two to five years. He appeals and presents several grounds for reversal. The one dispositive of this appeal is defendant's contention that he was not proven guilty beyond a reasonable doubt.

On Sunday, January 22, 1967, at about 9:20 p. m., the complaining witness, a woman of mature years, was returning home from a visit with friends at 1900 West Washington Boulevard, Chicago. She was walking south on Oakley Boulevard toward West Madison Street when a group of six boys seized her and pulled her into a gangway at 11 North Oakley. The boys hit the woman about the face and four of them had intercourse with her. The assault attracted the attention of persons nearby who called the police. Two squad cars responded. When police officers flashed lights into the alley adjoining 11 North Oakley, they heard noises of youths running and someone yell, "The police!" Five or six youths ran south toward Madison Street. Officer Coconato flashed a light into a gangway and found complainant. She told him she had been raped. A short time later Coconato joined another officer in the chase. A youth was seen caught on a cyclone fence. It was the defendant. He freed himself; and after a chase, defendant was arrested.

At defendant's trial the woman and four police officers testified. She described the assault and rape; the four police officers described their response to the call, the flight of the youths and the apprehension of de-

176

fendant, the only one of the boys caught. Defendant, the only defense witness, testified that on the evening in question he visited the home of his cousin, Henry Summers. They went to a hot dog stand at Oakley and Madison. The cousin left defendant there. Defendant said he was to meet his cousin at the corner of Madison and Oakley. Defendant went to the corner but did not see his cousin. He walked north and when he reached 11 North Oakley he heard a voice calling his name from a gangway. He walked toward the voice and met his cousin who told him that a "Jimmie Bell had some lady down." Although the cousin did not tell defendant what was going on, he could imagine. Defendant said he stayed there about five or ten minutes trying to persuade his cousin to go home with him. The police came and everybody ran. He became scared and ran, too. He saw the other youths hiking over the fence; he panicked, tried to climb but got caught. He then got free, ran and was apprehended by the police. Defendant denied ever seeing complainant, denied having relations with her or ever having touched her. He said he did not see anyone have sexual relations with her.

Defendant's contention that he was not proven guilty beyond a reasonable doubt is based mainly on the complainant's testimony. She was asked about the lighting conditions in the area where she was attacked. She said that there "[w]as only one dim light." She was asked if she could see the faces of the youths who assaulted her. She said she could not. When asked if she could describe the facial features of the boys, she said, "[Y]es. There was—all was about, I say all young boys, the tone of their voices was no more about maybe 15 or 16 years old." As the boys struck her about the face, complainant said she threw her hands up to keep them from blacking her eyes. At the police station to which she was taken later, the defendant was the only youth

<br>

shown to her. When she was asked whether she saw at the police station "[a]ny of those boys," she said: "[I] told the officer here this one here sitting here looked like one of them that had pulled me in the gangway." She was then asked whether she was referring to the defendant who was then in court. Her answer was, "[Y]es, he looked like one of them."

When cross-examined, complainant was asked again about the defendant. She said: "[W]ell, he looked like one of them that pulled me in the thing. That is all that I can say, that he looked like him." When she was asked concerning the clothing the defendant wore, she said she did not know. She was asked about the height of the other boys, and she said, "[I] don't know. Wasn't too tall." When she was asked about the four boys who had sex relations with her that night, her answer was "[I] couldn't tell you who had me. I don't know who had me." She said, however, she was positive that defendant was not one of the four boys. She was then asked, "[D]o you know whether or not this defendant did anything to you? Did he strike you or —" Her answer: "[I] don't know, but I had panic. I got excited, I panicked. All I know I was getting licks upside my face. Now, who hit who and who did what, I don't know."

■■ The identification testimony has to be weighed against all of the facts and circumstances of the case, together with defendant's denial, his persistence since his arrest in that denial, and the explanation he gave concerning his presence at the place where the rape occurred. The testimony of a single witness, if it is positive and the witness is credible, is sufficient for a conviction even though there be contradictory testimony by the accused. People v. Tribbett, 41 Ill2d 267, 242 NE 2d 249; People v. Howard, 112 Ill App2d 167, 251 NE2d 369.

178

■ ■ Identification of a defendant need not be positive. The weight to be given identification testimony is a question for the judge or jury to determine in connection with other circumstances of the case. People v. Oswald, 26 Ill2d 567, 187 NE2d 685. However, when identification of a defendant is not positive, there must be some fact or circumstance which aids the judge or jury in determining the weight to be given the identification testimony.

■ In the case before us complainant was uncertain in her identification of the defendant. It is almost an axiom that identification of a person by one who has never seen him before is an opinion or conclusion of the identifying person. The attendant circumstances, together with the probability or improbability of affording an opportunity for a definite identification, are important in weighing the evidence of identification of one stranger by another. People v. Peck, 358 Ill 642, 193 NE 609.

In People v. Fiorita, 339 Ill 78, 170 NE 690, witnesses said of the defendant: "[a]t least it was somebody who looked like him. . . ." "[F]iorita looked like one of the men; . . ." "[s]he believed one of the four men looked like one of the defendants. . . ." The Supreme Court said, 339 Ill 78 at 85:

> It is the well established law of this State that the burden rests upon the People not only to prove the commission of the crime beyond a reasonable doubt but also to prove by the same measure of evidence that it was committed by the person or persons accused, and a conviction cannot be said to be sustained by the evidence beyond a reasonable doubt where the testimony of the witness shows that their identification of the defendant was doubtful, vague and uncertain.

The State concedes as much when it admits in its brief that complainant "[d]id not know whether the defendant, Emile Washington, had done anything to her in the gangway because she had panicked and had gotten excited and was getting hit in the face in the darkness. . . ." It argues, however, that defendant's admitted presence at the scene of the crime and his flight from the police were sufficient to prove his complicity in the crime of rape.

This argument overlooks the State's theory of prosecution. There was no claim that defendant committed the rape. The State's case was predicated on the notion that defendant was accountable for the conduct of the other youths who raped the complaining witness. Ill Rev Stats 1965, c 38, §§ 5-1, 5-2(c).

> A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself, or that of another and he is legally accountable for such conduct as provided in sections 5-2 or both.
>
> A person is legally accountable for the conduct of another when either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. . . .

■■■■ To impose accountability on defendant the State had to prove beyond a reasonable doubt that he facilitated the commission of rape by the other boys. People v. Brumbeloe, 97 Ill App2d 370, 240 NE2d 150. The evidence had to prove beyond a reasonable doubt that defendant committed an act with intent that an offense be committed on the complainant. The State's theory required proof that defendant furthered a common plan; that between him and the other boys was a concert of action. People v. Valentine, 60 Ill App2d 339,

180

208 NE2d 595. Mere presence of the defendant at the scene of the crime was not culpable. People v. Barnes, 311 Ill 559, 143 NE 445. Even his consent, or knowledge that a crime was being committed, though involving moral turpitude, did not constitute aiding or abetting. People v. Dalton, 355 Ill 312, 189 NE 265; People v. Ramirez, 93 Ill App2d 404, 236 NE2d 284.

 Defendant admitted that when the police drove into the alley near 11 North Oakley he fled. The State argues that defendant's flight demonstrated his complicity in the crime of rape. This argument overemphasizes the element of flight. It is settled that defendant's flight may be considered with other evidence as tending to prove guilt. People v. Rossini, 25 Ill2d 617, 621, 185 NE2d 831; People v. Stewart, 74 Ill App2d 407, 416, 221 NE2d 80. However, all of the evidence, including the circumstances of flight, must prove defendant guilty of the crime charged.

 We conclude that defendant's conviction rests on a doubtful, vague and uncertain identification. The State's theory of defendant's accountability for the conduct of the youths who attacked complainant was not supported by evidence as required by law. The evidence in this record does not prove defendant guilty beyond a reasonable doubt. Therefore, the judgment is reversed.

Judgment reversed.

ENGLISH and DRUCKER, JJ., concur.