THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICKY WAYNE MORRISON, Defendant-Appellant.

Fourth District   No. 14408

Opinion filed October 28, 1977.

Richard J. Wilson and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Robert C. Perry and Gary J. Anderson, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Following a jury trial in the Circuit Court of Adams County, defendant Ricky Morrison was convicted of the offense of armed robbery and was sentenced to a term of 4 to 12 years' imprisonment. Defendant appeals contending that the evidence was insufficient to prove beyond a reasonable doubt that he was legally accountable for the armed robbery committed by Fred Bricker.

There is no dispute that an armed robbery occurred. At trial, Elder Reninga testified that he operated a tavern at 1800 State Street in Quincy, Illinois. In the early morning hours of Saturday, August 28, 1976, an individual came in and demanded all of the money from the cash register. The man wore a stocking mask over his head, had a pistol in his hand, and carried a paper bag. Mr. Reninga's brother gave him the money from the cash register and the man demanded their billfolds. Mr. Reninga took about $75 from his pocket and put it in the paper sack. The man turned and started for the door. Mr. Reninga took his gun from underneath the bar and told the man to stop or he'd shoot. The man opened the door and Mr. Reninga fired three times. The robber, later identified as Fred Dale Bricker, was shot and killed.

Robert S. Buddemeyer testified that he resided at 1620 Ohio Street, several blocks from the occurrence. In the early morning hours of August 28, 1976, his wife had heard some noises and they had gone out on their porch because there had been prowlers in the neighborhood in the past several weeks. As they were sitting on their porch, he saw a car drive around the corner of Ohio and 18th and park about three houses from the corner. He thought the lights were turned off. He saw the interior light of

the car come on and an individual get out on the passenger side of the car. The person exited the car and shut the door. They watched the car for quite awhile. He then heard a noise that sounded like a shot. Later, he heard sirens and saw the car he was watching pull away very fast.

Julia Selsor testified that she had been living with the defendant. On August 27, 1976, they went out at about 7 p.m. They returned to the apartment and defendant left about 11:30 p.m. When he returned at about 12:30 or 12:45 a.m., he was very upset. He told her that Fred had been shot and was dead and asked her to go to the police station with him and tell the police that she had been with him all night. She had first told the police that she had been with him all night, but later told them the truth.

Sergeant Al Griffin of the Quincy Police Department testified that he and Detective Mason interviewed defendant in the early morning hours of August 28, 1976. The interview started at about 4 a.m. and they explained defendant's rights to him and defendant executed a written waiver of his rights. Sergeant Griffin testified that defendant told them that about 7 p.m. the previous evening he had received a telephone call from Fred Bricker who wanted him to do something. Due to a dispute between defendant's girlfriend and Bricker, he declined to go over and talk to him. Defendant and his girlfriend then went out for several hours. He dropped his girlfriend off at the apartment about 11 or 11:30 p.m. and then went to another friend's house. The friend was not home so he decided to see Fred about the phone call. He went to Fred's house and he and Fred had a beer. Fred's girlfriend was there and the three of them talked for awhile and then went riding in the car. After they took Fred's girlfriend home, Fred told defendant that they were going to rob a place. They went to Fred's brother's home and had more beer. Fred told his brother to get two masks for him and the brother gave him the stocking masks. Fred persisted in trying to convince defendant to assist him with the robbery of Elder's Tavern, but defendant did not want anything to do with it. They drove to defendant's apartment, but his girlfriend had left a note that she would be back at 1 a.m. They continued driving around and he stopped on State Street at 19th, near a church. Defendant again declined to participate in the robbery. They drove around and defendant parked his car near 18th and Ohio. Fred got out of the car, walked to the corner of 18th and Ohio, turned around and returned to the car. At that time, Bricker gave defendant a holster. According to defendant's story, that was the first time he saw that Bricker had a gun. Sergeant Griffin testified that defendant told him that he, defendant, then pulled away and drove back to his apartment. His girlfriend had not returned so he went back to 18th and State where he saw several squad cars and observed Fred's body on the sidewalk. He then returned to his apartment, got his girlfriend, and they went to the police station. Defendant gave the police

permission to search his car and police found the holster under the driver's seat.

Louis Ferguson, the chief jailer in Adams County, was present when defendant was processed into the jail. He testified that defendant had told him, "I almost went in too."

Tammy Wagy, Fred Bricker's girlfriend, testified that she had been with Bricker and defendant that night, but Bricker had not mentioned committing a robbery and she had not seen or heard about the gun on that occasion.

With a few exceptions, defendant's testimony at trial was substantially the same as his statement to the police on August 28, 1976. One difference was that at trial, defendant testified that he met Bricker and Bricker's girlfriend on the street outside another friend's house. Another difference was that defendant testified that he continued to sit in his car for about 10 or 15 minutes after Bricker left for the second time thinking that Bricker would return as he did before. When defendant heard some sirens, he decided to leave and drove back to his apartment. Defendant testified that he did not think Bricker would commit the robbery, that he thought Bricker was joking, that "It was just the alcohol talking."

Section 5—2 of the Criminal Code of 1961 provides:

> "A person is legally accountable for the conduct of another when:
>
> * * *
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1975, ch. 38, par. 5—2.)

Defendant contends that the State failed to prove that he committed any act which aided or abetted Fred Bricker in the commission of the armed robbery or that any of defendant's acts were done with the specific intent to facilitate the commission of that offense. He argues that mere knowledge that a crime is being committed and presence at the scene is insufficient to support a finding of legal accountability (*People v. Owens* (1975), 32 Ill. App. 3d 893, 337 N.E.2d 60; *People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904).

In *Tillman*, the two defendants had been convicted of armed robbery, murder, and attempted murder on a theory of accountability. The two principals were acquaintances of the defendants and had been riding in a car driven by defendant Tillman. The other defendant was also riding in the car. The two principals had been talking about taking another car. As they drove northbound along the highway, they passed a car parked at a rest stop on the southbound side. According to the two defendants,

*Tillman* turned the car around at the instruction of one of the principals, and drove back to the rest stop. As the two principals got out of the car, the defendants saw that the men had a rifle and a gun. Defendant Tillman then drove north and parked his car some distance from the rest area. The two principals shot the man and woman in possession of the parked car, took money from them, and took the car. On appeal, this court reversed the convictions of the two defendants, ruling that the evidence was insufficient to show any intent on the part of defendants to engage in criminal activity with the perpetrators of the crime; that mere presence at or in the vicinity of the scene of the crime was not culpable.

■■ The evidence in the instant case differs from that in *Tillman*. After Bricker told defendant that he intended to commit a robbery and after Bricker got two masks to use in the robbery, defendant continued to drive Bricker around town in defendant's car. After Bricker's attention focused on Elder's Tavern as the object of the robbery, defendant drove him to that area and parked his car in a secure place just a few blocks around the corner from Elder's. Although Bricker again told defendant that he intended to rob Elder's and defendant saw Bricker's gun, defendant remained in that location after Bricker got out of the car and walked in the direction of the tavern. From the circumstances surrounding those actions, the jury could find that defendant acted with the intent to facilitate Bricker's commission of the armed robbery. The jury was not required to believe defendant's testimony that he did not think Bricker would commit the robbery.

■■ In addition, defendant's girlfriend testified that he asked her to lie to the police about his actions on the night in question. Although the defendant's conduct after the occurrence cannot be considered as acts aiding and abetting the planning or commission of the offense (*Owens*), an attempt to fabricate an alibi shows a consciousness of guilt and may be considered in determining the intent of the defendant (*People v. Spenard* (1977), 46 Ill. App. 3d 892, 361 N.E.2d 856.)

Accordingly, the conviction and sentence from which this appeal is taken are affirmed.

Affirmed.

CRAVEN, P. J., and TRAPP, J., concur.