(No. 22274.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RICHARD BASILE, Plaintiff in Error.

*Opinion filed April 21, 1934.*

172

CHARLES A. BELLOWS, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Tony Rocco, Emil Manzone, Dominic DeNardi and Richard Basile were indicted in the criminal court of Cook county for the murder of Maurice Marcusson. George Chevas was charged with being an accessory after the fact. The defendants Basile and Chevas were tried together, the abstract not showing exactly what became of the case as to Rocco, Manzone and DeNardi. Chevas was acquitted, and the plaintiff in error, Basile, having been found guilty of murder and sentenced to life imprisonment, prosecutes this writ of error.

Mitchell Goldenstein was the only witness to the murder who testified. The evidence given by him was, in substance, that on the afternoon of January 20, 1933, he was sitting on the stairway on the ninth floor of the building known as 323 West Jackson boulevard, in Chicago, from which position he had a view down the hallway; that two fellows ran into the wash-room and that both of them then came out, and Marcusson, who was killed, came out

of room 901. Marcusson was a police officer but at the time of the homicide was off duty and in plain clothes. Goldenstein testified that Marcusson talked to the two men whom he had seen come out of the wash-room, and that Tony Rocco, one of them, pulled a gun, put it against Marcusson's side and shot him three times. On cross-examination he stated that Marcusson pulled a gun before Rocco did and that he saw a police badge. This is the only evidence as to the actual homicide.

The defendant Chevas and the plaintiff in error, Basile, were arrested in connection with this crime. After being questioned between twenty-four and thirty hours while kept imprisoned and without food, each made a statement or confession. The confession of Chevas, which was admitted in evidence, had typed at the top of it the following: "Now, George, my name is Bernard M. Kennedy. I am assigned to the twenty-second district, Maxwell street. You are now under arrest in connection with the attempt robbery and shooting of Ptlm. Morris Marcusson on the ninth floor of 323 West Jackson blvd. on the 20th day of January, 1933, in the attempt robbery of the loan company in room 903." The confession of the plaintiff in error, which need not be quoted in full, implicated him with the other defendants in a plan or conspiracy to commit a robbery on the ninth floor of the building at 323 West Jackson boulevard, with an admission that before starting on the trip Tony Rocco had said that they were going to visit a dress shop in the building, inquire about buying a dress and then "stick the place up." The confession reveals further details of the procedure. It states that plaintiff in error borrowed the car of Chevas, went to the home of DeNardi, where the other conspirators were gathered, and from there to the business district where the crime was committed; that he was the driver of the car and circled the block bounded by Jackson, Franklin, Van-Buren and Market streets after letting the other defend-

ants out of the car; that Manzone and DeNardi came back and jumped into the car and told him that Rocco had been shot by police officers; that he thereupon drove the car away from the scene of the crime, and gave details as to the route followed and his own actions until his arrest.

Upon the trial of the case the police officers gave very conflicting statements as to how the confessions were obtained and in relating the incidents contradicted themselves and each other, in some instances retracting previous statements made by them, admitting them to have been wrong. They all denied that any violence had been used in securing the confessions, but did not deny that the defendants had been kept without food for a long period of time. Neither was it denied that one of the officers had struck Chevas about a week previously, which corroborated Chevas' statement to that effect and that he was still in fear of the officer. Plaintiff in error testified that he had been struck and beaten and that an officer had threatened to throw him out of the window if he did not confess. Chevas testified that he was promised he could go home immediately if he would sign the statement. The testimony of the officers was of such a character as to seriously detract from their credibility—so much so that at the close of all of the preliminary evidence as to the taking of the confessions the trial court said: "I might say off the record that it is a musty confession business—the way they got these confessions—but that is not for me to pass on."

Many errors are assigned as to the admission of the confessions, the giving and refusal of instructions, the limitation of cross-examination, remarks of the court and of the prosecuting attorney, and other matters. Since most of the errors complained of revolve about the admissibility of the confessions it will be unnecessary to consider these assigned errors in detail.

Regardless of all other questions of admissibility, it was clearly incompetent to permit that part of the statement

of Chevas which is hereinabove quoted to go to the jury. It can be characterized as nothing less than direct testimony on the part of the police officer that there had been an attempted robbery and a shooting of policeman Marcusson on the ninth floor of the building at 323 West Jackson boulevard. There is no evidence in the record that there was any attempted robbery or any crime of any sort committed at that time and place other than the shooting of Marcusson, and it was erroneous to permit officer Kennedy to insert such a statement into the record by way of a heading or statement in Chevas' alleged confession.

The law is well settled that a voluntary confession is admissible in evidence and an involuntary one is not. (*People* v. *Buckminster,* 274 Ill. 435; *People* v. *Vinci,* 295 id. 419.) The difficulty in each case is one of applying the rule to the facts before the court. As we said in the *Vinci case, supra,* a confession is regarded as voluntary when it proceeds from a spontaneous expression of the mind, free from the influence of any extraneous disturbing cause. The rule is, that upon a preliminary inquiry by the court to determine the admissibility of a confession the burden is upon the People to show that it was voluntarily made. (*People* v. *Frugoli,* 324 Ill. 324.) The record in this case casts grave doubt upon the claim that the confessions were voluntarily made, and that the trial court was of the same mind is sufficiently evidenced by his remarks. Keeping a prisoner without food and under a barrage of questions for a day or more is not conducive to any voluntary action on his part, and we will not approve this method of securing evidence.

Since the case must be remanded for a new trial there is one other point which must receive consideration. The only evidence connecting the plaintiff in error with the homicide on the ninth floor of the building in question is his own confession. According to this statement he became a party to a plan for holding up a dress shop at this loca-

tion. There is no evidence that there was any hold-up or an attempted hold-up.

In *Lamb* v. *People*, 96 Ill. 73, the defendant was convicted of murder and sentenced to death. He and other burglars had stolen a quantity of merchandise which was afterwards hauled in an express wagon to a pawnshop. While the goods were being unloaded a police officer came upon the scene and was shot and killed by someone near the wagon. The evidence failed to show that the plaintiff in error was at the scene of the shooting or had advised or encouraged it. This court reversed the judgment and remanded the cause, and, speaking through the late Mr. Justice Mulkey, used the following language: "The principle which underlies and controls cases of this character is the elementary and very familiar doctrine, applicable alike to crimes and mere civil injuries, that every person must be presumed to intend, and is accordingly held responsible for, the probable consequences of his own acts or conduct. When, therefore, one enters into an agreement with others to do an unlawful act he impliedly assents to the use of such means by his co-conspirators as is necessary, ordinary or usual in the accomplishment of an act of that character. But beyond this his implied liability cannot be extended. So, if the unlawful act agreed to be done is dangerous or homicidal in its character, or if its accomplishment will necessarily or probably require the use of force and violence which may result in the taking of life unlawfully, every party to such agreement will be held criminally liable for whatever any of his co-conspirators may do in furtherance of the common design, whether he is present or not. But where the unlawful act agreed to be done is not of a dangerous or homicidal character, and its accomplishment does not necessarily or probably require the use of force or violence which may result in the taking of life unlawfully, no such criminal liability will attach merely from the fact of having been a party

to such an agreement. The views here expressed are fully sustained by the following authorities: 1 Bish. Crim. L. (6th ed.) sec. 641; Hawkins' P. C. book 2, chap. 29, secs. 19, 20, 21; Foster, 369, 370; *Regina* v. *Franz*, 2 F. & F. 580; *Regina* v. *Horsey*, 3 id. 287; *Regina* v. *Luck*, id. 443; Roscoe's Crim. Ev. 673, 655; *Regina* v. *Tyler*, 8 C. & P. 616; *Regina* v. *Lee et al.* F. & F. 63; *Regina* v. *Turner et al.* 4 id. 339; *Rex* v. *Hawkins*, 3 C. & P. 392; *Watts* v. *The State*, 5 W. Va. 532; *Rex* v. *Howell*, 9 C. & P. 437." In the later case of *Butler* v. *People*, 125 Ill. 641, we used the following language: "No person can be held responsible for a homicide unless the act was either actually or constructively committed by him, and in order to be his act it must be committed by his hand or by some-one acting in concert with him or in furtherance of a common design or purpose. Where the criminal liability arises from the act of another, it must appear that the act was done in furtherance of the common design or in prosecution of the common purpose for which the par-ties were assembled or combined together, otherwise a per-son might be convicted of a crime to the commission of which he never assented, which could not be done upon any principle of justice." The foregoing quotation from the *Butler case* was again quoted with approval in *People* v. *Garippo*, 292 Ill. 293. In the recent case of *People* v. *Faught*, 343 Ill. 312, we again approved the same principle.

From these authorities it is clear that the plaintiff in error cannot be convicted of murder without additional evidence not disclosed by the present record. There is no evidence of any robbery or attempt to rob any place of business. According to the confession of the plaintiff in error he would be an accessory, and therefore guilty as a principal, if a murder occurred in connection with the planned robbery. But he can only be convicted of that which is done in furtherance of the common design, else he might, as was said in the *Lamb case, supra,* be held

responsible for an act to which he never actually or impliedly gave his consent. So far as this record shows, Rocco's killing of Marcusson was not in any way connected with the proposed robbery mentioned in the confession of Basile.

Inasmuch as the case must be remanded for further consideration we will not otherwise comment on the evidence.

The judgment of the criminal court of Cook county is reversed and the cause remanded to that court.

*Reversed and remanded.*