THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FREDDIE LEE BELL, Defendant-Appellant.

(No. 11381;

Fourth District—March 21, 1972.

Theodore A. Gottfried, of Defender Project, of Chicago, (Kenneth L. Gillis, of counsel,) for appellant.

Basil G. Greanias, State's Attorney, of Decatur, for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The Defendant-Appellant, Freddie Lee Bell, was jointly indicted, on November 5, 1969, with Harold Junior Bradford, Kenneth Lynn and Albert James Love, for the murder of one Hobart Hostetler, committed during the course of an attempted armed robbery. The Public Defender was appointed for all four defendants.

Thereafter, the Public Defender filed a motion which asserted that the defense of Bradford and the defenses of the other three defendants represented a conflict of interest. Pursuant to the motion the Public Defender was relieved of his representation of Bradford for whom other counsel was appointed. The Public Defender continued his representation as to defendants Bell, Love and Lynn.

On January 15, 1970, Bradford entered a plea of guilty to the crime of murder, and was sentenced to an indeterminate term of 30 to 60 years. Five days later, on January 20, 1970, the State's Attorney filed an information jointly charging the defendants Bell, Lynn and Love with the crime of voluntary manslaughter committed during the attempted armed robbery of Hostetler. On that same day, the defendant Bell, together with Lynn and Love, waived indictment, trial by jury and simultaneously entered pleas of guilty to voluntary manslaughter. The defendants and the People then waived hearing in aggravation and mitigation, and the State's Attorney recommended the sentences which were ultimately imposed by the Court. At this juncture the Court inquired of defendant's attorney whether he wanted to be heard why the Court should not accept the sentence recommendation and adopt it. To this inquiry counsel responded "No, Your Honor, and if I may I would like to make a brief statement as to the sentence recommended". The Judge replied that he would hear defendant's attorney "* * * because, as you know, I have said how can this be reconciled in view of the sentence imposed on a codefendant. (Referring to the sentence imposed on Bradford) I am ready to listen to you".

Defendant's attorney then told the Judge, that this case had arisen out of an agreement of the four defendants to rob a gasoline station in Decatur, Illinois. That Lynn, Love and Bradford proceeded toward the gas station and "* * * an old man came towards them and Mr. Bradford, I am informed from all the facts and circumstances in this case, announced his intention or desire to commit a robbery of this individual rather than to go ahead what has been suggested in the beginning. Mr. Bell, of course, not being present at the time and knew nothing of this, and Mr. Lynn and Mr. Love strenuously objected to this action on the

part of Mr. Bradford, told him that they did not want to become involved in that and did not want anything to be done to the man. But Mr. Bradford insisted at that time that he was going to do it anyway and he parted company with Mr. Love and Mr. Lynn and went up and carried out his intentions without the assistance or backing of the other defendants in this case. It was in the process of the commission of this crime that Mr. Hostetler lost his life. The defendants' position in the case has been that they attempted to withdraw and I do believe that they did attempt to withdraw from the situation and to disassociate themselves from Mr. Bradford in the action that he took.

It is also clear from the evidence that Mr. Bradford is the one who possessed the weapon and intended to carry this crime out, and in fact did carry it out, where the others not only tried to disassociate themselves from this activity but were also without any weapons themselves.

Further * * * each of these three individuals who now stand before the Court were in position of giving full cooperation to the police department, and it is due in some part to their willingness to tell about what happened that the crime was solved and that the individual who actually perpetrated this killing was finally brought into court and a conviction was obtained * * * Because of these factors that are involved, * * * the information was filed in this case * * * of which the defendants have now been convicted, and it is for this reason that the recommendation is made in the case. I think I feel and also the State's Attorney feels that there is a substantial difference in the responsibility and in the degree of participation, and in the attitude of these three individuals from that of Mr. Bradford * * * It is for this reason that I feel the sentence should be accepted by the Court".

The State's Attorney then stated: "I ratify the suggestions made by counsel as far as the People's position and reason, and the People's position in this matter. *Again there is the legal theory involved here* as to actually in fairness in application to these three defendants as compared to the co-defendant, and substantially his statement of our position is the same as stated here in the court room". Whereupon the court imposed identical sentences of 7 to 20 years on Bell, Lynn and Love.

In their argument, the People state that the pleas of Bell, Lynn and Love were "obviously negotiated pleas", and while the pleas were taken prior to the adoption of Supreme Court Rule 402, and the formal requirements of that Rule did not obtain, the record amply supports that observation and we treat this for what it plainly was: a negotiated plea.

Defendant Bell urges here that the trial judge, before accepting the plea, did not adequately inform the defendant of the nature of the crime of voluntary manslaughter "* * * as well as his position regarding the

principle of criminal accountability, which bore on the defendant's situation".

On the day of Bell's plea he, together with Lynn and Love, had received copies of the information and indicated their desires to plead to voluntary manslaughter. They had previously (on November 6, 1969) been arraigned on the murder charge and had received copies of that indictment. The indictment charged the four defendants as principals. The murder indictment reciting that Bradford, Lynn, Love and Bell had committed the offense of murder in that they, pursuant to a plan to commit the offense of armed robbery, attempted to take United States currency from the person of Hobart Hostetler, by threatening the use of force while armed with a gun and did kill Hostetler during the attempt in that they shot him with a gun. The information charged Bell, Lynn and Love with voluntary manslaughter in that they, pursuant to a plan to commit the offense of armed robbery, attempted to take money from the person of Hobart Hostetler by threatening the use of force with a gun, and did kill Hostetler during the attempt to commit armed robbery, in that they shot him with a gun; and that at the time of the killing they were acting under a sudden and intense passion, resulting from serious provocation by the individual killed.

Before accepting the pleas the Court inquired if each understood what he was accused of doing in the information, to which question each answered yes. He asked if they understood that it involved the death of one Hobart Hostetler, and the purported robbery of the deceased, to which Bell and each of the other defendants answered in the affirmative. The Court explained the minimum and maximum limit of the sentence which could be imposed, explained their right to a trial by jury and took their waiver of the same, asked them if they were each pleading guilty because they were, in fact, guilty of voluntary manslaughter, to which each defendant replied affirmatively; made long and careful inquiry to determine whether or not they had been subjected to any threats, coercion or improper inducement of any kind in connection with their pleas, and each responded that nothing of the sort had occurred. The Court found that their pleas were voluntary and accepted the pleas. Their counsel stated to the Court that all three of the defendants had been given an opportunity to confer with members of their family and had fully considered the matter with them and also with counsel.

Following imposition of sentence the judge inquired of each defendant as to whether the sentence was more severe or longer than their counsel or the State's Attorney might have indicated that they would receive on their plea, or whether anyone had misinformed them as to what they might receive on the pleas and each answered in the negative.

■■ In determining whether a defendant has been sufficiently admonished and comprehends the nature of the charges against him the "total record" must be considered. (*People v. McGrady*, (Ill.App.2d), 267 N.E.2d 515.) We have examined the "total record" here, and the context in which it was made, together with the postures of Bell and his co-defendants at that particular moment in time.

We note that there is no suggestion as to how the trial judge was to be expected to admonish the defendants about the legal principle of accountability in view of the fact that the information charged the defendants as principals. The first indication of accountability being involved came *after* the pleas had been accepted and judgment of conviction entered; it first entered the case, so far as the judge was concerned, at the time when sentence was to be imposed, and it came from defendant's own counsel, and is contained in his statement to the Court excerpted above. We further note that there is no contention here that the defendants were not competently represented.

■■ Bell was 21 years of age at the time he entered his plea. We find it incredible that he did not understand that he was being held accountable for the acts of Bradford. The murder indictment and the information charged Bell with killing Hostetler by shooting him with a gun. Bell was aware that he did not shoot the victim; he was aware that he did not personally attempt to take money from Hostetler, and he was aware that when Hostetler was killed he (Bell) was not "* * * acting under a sudden and intense passion resulting from serious provocation by the individual killed". His attorney related that Bell had discussed the matters referred to in his statement to the Court, and the State's Attorney in concurring in the statement referred to the "legal theory involved here". We also note that Bell, and his co-defendants, were aware that Bradford had previously entered a plea of guilty to the murder charge. Bradford then became, of course, an available witness for the People and it is noted that the statement of "facts" is that of defendant's counsel, and presumably reflects his clients' version of the incident. What Bradford's version would have been, had he been called as a witness during a trial, we do not know, nor does defendant.

In *Brady v. United States*, 25 L.Ed.2d 747, p. 761 the Court said "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made which in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to

be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision".

We are confident, in reviewing the record in this case that Bell had weighed, after consultation with his family, and his attorney, the chances and risks involved in standing trial on either the murder charge or the voluntary manslaughter charge.

■■ A judgment of conviction is justified by defendant's admission that he committed the crime charged even though there is no separate, express admission by the defendant that he committed the particular acts claimed to constitute the offense charged in the indictment or information. *North Carolina v. Alford,* 27 L.Ed.2d 162.

■■ By entering his plea of guilty Bell had bargained for, and received from the People their agreement that he would escape exposure to the possible imposition of a sentence which carried a statutory minimum of 14 years and a maximum entirely within the Court's discretion, or a penalty of death (Ill. Rev. Stat. 1969, ch. 38, par. 9—1(b)), but would, instead, be pleading to an offense prescribing substantially lesser penalties, to-wit: a minimum of one year and a maximum of twenty years (Ill. Rev. Stat. 1969, ch. 38, par. 9—2(c)). There is no evidence of compulsion or threat; he was ably represented, and the agreement was freely arrived at and intelligently made. Bell was not lured into the plea. He had consulted with his family and his attorney; he had weighed the risks and the advantages. His attorney requested the Court to accept the recommended sentence. Such a plea is not invalid. (*Brady v. United States,* 25 L.Ed.2d 747.) His plea was not only an admission of past conduct, but the *quid* for the *quo* which the People had extended and for which he had negotiated with advice of counsel. The record establishes that Bell, and his co-defendants were aware of the nature of the charges to which they entered their pleas and that they were being held accountable for acts of Bradford in which they had not physically participated.

■■ The dissenting opinion deals at length with the contents of "statements" given to the authorities by Bell, Bradford, Love and Lynn. These were attached to the People's answer to defendants' motion for discovery. The statements are physically present in the record before us. There is no indication in the record that the judge was aware of the presence of the statements in the file at the time Bell's plea was taken, and we are unaware that the judge is under any obligation to search the file and read every document which it contains when taking a plea. We disagree that the statements are "* * * presumably part of the total record". These "confessions" were never offered in evidence, no foundation was ever

laid to establish their authenticity and they were not, therefore, before either the trial judge, nor, in our view, are they before this Court for consideration for any purpose whatsoever. To utilize these "confessions" for the purpose of reversing this case, and in the process to weigh the matters therein contained, to construe the ambiguities present is, in our view, to consider matters not before us.

Judgment affirmed.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN dissenting:

An examination of the "total record" in this case indicates non compliance with Supreme Court Rule 401(b), and, as I see it, non compliance with the minimum constitutional requirements as set forth in *Boykin v. Alabama*, 395 U.S. 238, 23 L.Ed.2d 274, and a total failure of the trial court to adequately admonish the defendant and to ascertain that he understood "the nature of the charge against him".

In consideration of this case it should be noted that the plea of guilty was accepted on January 20, 1970. At the time Supreme Court Rule 401(b) in pertinent part provided: *"The court shall not permit a plea of guilty * * * by any person accused of a crime * * * unless the court finds from proceedings had in open court at the time * * * (of) the plea of guilty * * * that the accused understands * * * the nature of the charge against him * * *.* The inquiries of the court, and the answers of the accused to determine whether he understands * * * and comprehends the nature of the crime* with which he is charged and the punishment thereof fixed by law, shall be taken and transcribed and filed in the case. * * *"* (Emphasis supplied)

It should be noted that this requirement places a duty on the court not to permit a plea of guilty except upon the terms and conditions set forth in the rule. The specific language of this rule is examined in *People v. Miller*, 123 Ill.App.2d 473, 260 N.E.2d 312. The court there also discusses the prior rules from which Rule 401 is derived. In *People v. Washington*, 5 Ill.2d 58, 124 N.E.2d 890, in discussing former Rule 27(a), a predecessor to the present Rule 401, the court noted: "Throughout the history of the administration of criminal justice in this jurisdiction, it has been a strict requirement of our law that in each conviction of a crime upon a plea of guilty, the record must show that before the entry of the plea the court fully explained its consequences to the defendant and that the explanation was understandingly received." One of the requirements of Rule 27(a) was that the court determine that the accused understands or comprehends the nature of the crime with which he is charged.

Rule 401(b) at the time this plea was accepted required the court to determine that the defendant understood the nature of the charge against him and such understanding was to be based upon proceedings had in open court at the time the plea of guilty is entered. Thus, in our examination of this record, that which transpired at an earlier time with reference to the prior charge of murder is of no consequence and certainly of no significance in measuring the validity of the admonition at the time the plea was entered.

In *People v. Nardi*, 48 Ill.2d 111, 268 N.E.2d 389, the Illinois Supreme Court discussed the requirements of 401 indicating that the more stringent requirements now found in 402 were not retroactive and discussed *Boykin* and the cases following it and the constitutional requirement that the record must affirmatively show that the defendant has intelligently and knowingly pleaded guilty. One of the teachings of *Nardi* is that the requirement now found in Rule 402 that the court ascertain the existence of a factual basis for the defendant's plea is not to be given retroactive application.

When we turn to the record in this case, we find that statements of the defendant Bell and his co-defendants Lynn, Love and Bradford had been filed. These were filed in response to a discovery motion. They had not been admitted into evidence, but they were in the file and presumably part of the "total record". If we examine the total record upon an inquiry of a plea proceeding, then we examine it to overturn as well as to sustain the procedure. From those statements and from the subsequent statement of defense counsel, essentially concurred in by the State's Attorney, the trial court was informed of a scheme by the four defendants to rob a Gulf service station in the City of Decatur. In pursuance of that scheme, the four proceeded in a car toward the station. Bell remained in the car. Lynn, Love and Bradford departed the car and proceeded toward the station. En route they encountered or saw a Mr. Hostetler, the murder victim. According to counsel's statement, Bell was not present at the time and knew nothing of the robbery-murder of Hostetler, at least not until after the event.

Bradford's statement conflicts with this in certain respects. That statement, in question and answer form, does contain:

"Q. Now, did the four while you were in the car plan to rob that Gulf station?

A. I really don't know what they were up to. When they saw this man, they said let's get him."

In his statement, Bradford claims to have been drunk. However, his statement is to the effect that he, Lynn and Love got out of the car, "started approaching the service station and they saw the old man and

they said let's get him." Bell, even by Bradford's statement, stayed in the car. As I read the Bradford statement, it clearly indicates that this offense originated and was consummated after Lynn, Love and Bradford left the car.

After Bradford entered a plea of guilty to the crime of murder, Bell, together with Lynn and Love, all then charged with murder, consented to the filing of an information charging the crime of voluntary manslaughter. The language of the information is essentially the same as the language of the earlier indictment. It is clear from each that Bell's accountability for the overt criminal acts of Bradford would be under the accountability language of our Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 5—2(c)). Criminal responsibility for the action of another is a difficult area of the law. While the information in this case speaks in terms of such vicarious responsibility only incidentally, the admonition of the court to inform the defendant of the nature of the charge speaks of it not at all. That admonition is as follows:

"The Court. We will let the record show that on arraignment each defendant enters a plea of guilty to the pending charges.

Before we accept that plea, before we enter judgment on it, there are certain things I want to be sure of and let the record be complete on. The first is, do you and each of you understand what you are accused of doing in this information? Do you understand that you're charged with having committed voluntary manslaughter briefly in, I assume it's quite lengthy, it involves the death of one Hobart Hostetler and purported robbery of the deceased. Do you understand what they accuse you of doing? And let's take them separately again. Mr. Lynn do you understand what we call the nature of the charges? Is that right?

Defendant Lynn: I do.

The Court: Mr. Love?

Defendant Love: Yes.

The Court: And Mr. Bell?

Defendant Bell: Yes."

In *People v. Basile* (1934), 356 Ill. 171, 190 N.E. 307, the defendant and others intended to commit a robbery in a building. While the defendant waited in the car, one of the other potential robbers committed a killing which was not related in any way to the proposed robbery. The court indicated that the defendant would not be responsible for the killing since it was not committed "in furtherance of a common design". In *Basile*, the court referred to an earlier case which used the test of "probable consequences" of the common design to determine criminal responsibility. If that which is set forth in this record is true, there is no criminal accountability upon the part of Bell for the action of Bradford

and/or Lynn and Love. See *People v. Tillman,* 130 Ill.App.2d 743, 265 N.E.2d 904; Clark & Marshall, *Law of Crime,* 6th Ed., sec. 8.09, p. 474 (1958); 1 Warren, *Homicide,* sec. 62, p. 238; Wharton, *Criminal Law & Procedure,* sec. 110, p. 238, and cases there cited.

The acceptance of this plea of guilty and the imposition of sentence thereafter when everything in the "total record" clearly negated criminal responsibility was plain error of constitutional dimension. In *Boykin,* the U.S. Supreme Court expressed itself in this language: "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." Thus, more recently, the Supreme Court discussed negotiated pleas and the underlying rationale concerning an acceptance of such pleas. In the course of the discussion, the court noted the necessity that plea bargaining must be attended by safeguards to insure the defendant that which is reasonably due in the circumstances. *Santobello v. New York,* (U.S.), 40 Law Week 4076.

The committee comments on the *Standards Relating to Pleas of Guilty* recently approved by the ABA contain much discussion of the pros and cons of plea bargaining. By Rule 401, and later 402, our Supreme Court has clearly indicated approval of plea agreements when attended by the safeguards specified. These standards clearly recognize the great danger involved in offering leniency for guilty pleas to the charged, but perhaps frightened and uninformed individual. Clearly there is no such thing as a "bargain" sentence for an innocent person, nor is there any such thing as a beneficial sentence for an innocent defendant. Recent statistics of the court administrator tell us that about 85% of all felony cases that result in conviction are the result of pleas of guilty. Whether plea bargaining is accepted as desirable or rationalized as acceptable and expedient, it clearly needs to be attended with safeguards. One needed safeguard of an adequate admonition is missing from this record.

I would reverse and remand.