THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *v.* JAMES WILLIAM MANLEY, Defendant-Appellant.

(No. 70-188;

Third District—October 14, 1971.

Stuart R. Lefstein, of Rock Island, for appellant.

Gregory L. DePorter, Assistant State's Attorney, of Rock Island, for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant-Appellant, James Manley and three co-defendants Bruce Burt, Jerry Burt and Fred Gary were indicted for the offense of robbery

by the grand jury of Rock Island County. The trial of defendants Manley and Bruce Burt was separated from the trial of the other co-defendants and after a trial by a jury each was found guilty as charged. Defendant Manley was sentenced to a term of from one to seven years in the penitentiary from which judgment and sentence he has appealed.

The pertinent facts adduced by the State are substantially as follows. On June 14, 1970, Charles Myers was employed as the attendant at a Clark gasoline station located in Rock Island, Illinois. At approximately 10:30 or 11:00 P.M., he observed two "colored persons" walking toward the station on the west ramp drive. They came into the station and one of them, who was identified as defendant Burt, said something about "not having * * * a cash register" in the station.

A couple of minutes later, two other "colored men" walked up the east ramp drive. As the two new men were walking up the drive, the two in the station building stepped outside, and one of the two who had just arrived came into the station, so that there was then only one "colored man" in the station with the attendant.

At this time, with the attendant alone in the station with the newly arrived "colored man", and with the station door closed, the attendant was informed: "Man, if you don't want to get hurt, get your money out. I mean it, Man, if you don't want to get hurt. I mean it, Man, we've all got guns. If you don't want to get hurt, give me your money." The attendant never actually saw a gun. In response to the threat, the attendant handed over $35.00 and the individual taking the same stuck it in his pocket and ran out the door. As he did so, he said, "Come on, Man, let's go," and grabbed the arm of one of the men outside, and the two of them started running in an easterly direction.

Then, according to the attendant, as he came outside defendant Burt asked him what had happened, and the attendant replied, "I was robbed". The attendant then started to call the police. Whereupon, Burt, and the man who resembled Manley, also started to run. Myers, also called as a witness by the defendant, indicated that the defendants appeared surprised after he told them that he had been robbed.

Defendant Manley at the time of trial was 18 years of age and had no prior record. According to his testimony he had been at a pool hall in Davenport when he was picked up by defendant Burt at between 6:00 and 6:30 P.M., and that Fred Gary was with Burt. They then drove to a girl's house in Rock Island and met a Jerry Burt, who was a cousin of the defendant, Bruce Burt. After leaving the girl's house they rode around and parked the car on a side street and walked to the Clark Service Station.

Manley stated that he never did go into the station, but that Bruce Burt did and then came back out. He stated that Jerry Burt was inside the station, but that Fred Gary was outside. Manley then related that Jerry Burt came running out of the gas station and ran down the street. He heard Bruce Burt ask the attendant what had gone on, and after the attendant responded, Burt then asked him (Manley) what he thought they should do. Manley replied that he didn't want to get involved and told Burt that they should leave. They went back to the car and found Jerry Burt lying down in the back seat of the car.

The three of them then drove to a girl friend's house, stayed about an hour, and went to Davenport to Bruce Burt's house. He stated that they were then sitting at a table, and Jerry took some money out of his pocket and gave them $7.00 apiece. Manley stated that Jerry Burt did not indicate where he received the money, although earlier in the evening Jerry Burt had said something about a painter paying him $30.00 for painting a houe. Manley also stated that Jerry Burt owed him (Manley) money. He stated that he never at any time knew that anyone was going to rob the Clark Service Station.

On cross-examination, defendant Manley stated that they rode around for about an hour before the incident in question, but that he was not paying any attention to the conversation that was going on in the automobile, and specifically he did not hear them talking about "making a hit" or "snatching a purse somewhere". Manley stated that they were going to the service station to get some pop and that he ran down the street from the alley after the attendant told him about being robbed because he was "scared".

The testimony of Bruce Burt generally corroborated the testimony of Manley with his additional testimony that there had been a conversation principally between himself and Jerry Burt and Fred Gary concerning the latters' desire to "snatch a purse" or something, which plan Bruce Burt did not want any part of. According to this witness Manley was not a part of the conversation and the witness himself had no intention of going with or participating in any activities with the other two.

Rock Island police officers testified that defendants Bruce Burt and James Manley had been arrested in Davenport, had waived extradition had cooperated with the police and had executed question and answer statements. In their statements each of the defendants described their conduct generally in accord with their testimony in the case each denying that he had any knowledge of any intended robbery of the Clark station or that either of them intended to rob the station.

Defendant has made several assignments of error but the only assign-

ment which we believe it necessary to consider is his contention that the evidence is insufficient to justify the conclusion that he was guilty of the offense charged beyond a reasonable doubt.

■■ It is undisputed that defendant was not the actual perpetrator of the robbery. His guilt depends upon his accountability for the offense which took place. Such accountability is determined in accord with Ill. Rev. Stat. 1969, ch. 38, pars. 5—1 and 5—2(c). Section 5—1 provides, "Accountability for Conduct of Another—A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself, or that of another and he is legally accountable for such conduct as provided in Section 5—2, or both." Section 5—2(c) provides, "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense * * *." Whether a person is accountable and guilty of the offense charged may be proved by circumstantial evidence as in other cases. Presence at the scene of an offense and flight are circumstantial evidence which may tend to prove and establish defendant's guilt. (*People v. Smith,* 127 Ill.App.2d 199, 262 N.E.2d 165.) However such circumstantial evidence must be considered with all of the other circumstances in determining whether defendant's guilt has been satisfactorily determined. Defendant's presence and flight are subject to explanation and in light of other circumstances their tendency to prove guilt may be diminished. *People v. Washington,* 121 Ill.App.2d 174, 257 N.E.2d 190.

So far as the facts of the case at bar are concerned there is nothing in defendant's presence near the scene of the offense warranting the inference that he had prior knowledge concerning the commission of the offense or that he knew or should have known that an offense inside the filling station was being committed. The victim's testimony tends to corroborate the testimony of defendant concerning the defendant's surprise at learning that there had been a robbery and defendant's flight after a hurried conference with his friend is at best an ambivalent circumstance having no significant tendency either to prove the commission of the offense or render defendant's account improbable.

■ It is our conclusion that the evidence is so unsatisfactory that a reasonable doubt exists concerning defendant's guilt.

For the foregoing reasons the judgment of the circuit court of Rock Island County is reversed.

Judgment reversed.

ALLOY, P. J., and SCOTT, J., concur.