THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CLARENCE EDWARD HARGIS, Defendant-Appellant.

Fourth District Nos. 4—82-0398, 4—82-0399 cons.

Opinion filed November 3, 1983.—Rehearing denied December 5, 1983.

1066

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Michael B. Weinstein, Ellen M. Flaum, and David Bindi, Assistant Attorneys General, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:
"Murder most foul."
Sentence: natural life.
Affirmed and remanded.
Hargis was indicted for the murder and armed robbery of Richard

Dark. He was tried to a jury with a codefendant, Randy Daugherty, and both were found guilty on both counts. Hargis was sentenced to natural life on the murder charge and 20 years for armed robbery, the sentences to run concurrently.

## FACTS

The evidence at trial showed that Hargis, Dark, and Daugherty were together on September 5, 1981. Several persons saw the three at various places during the day. The last place the three were seen together was the Spot Tavern in Barry, Illinois. Daugherty and Hargis began playing pool around 8:30 p.m., while Dark was sitting at a nearby table. After Daugherty and the defendant finished their game, they sat down at a table apart from Dark. They carried on a quiet conversation but stopped talking when the bartender came over to their table. They talked for over an hour and then left with Dark around 10:30 p.m.

The next day, on September 6, 1981, Daugherty and the defendant were seen driving Dark's car at various times by different witnesses, the defendant riding in the passenger seat. Dark was not seen in the car. Several days later, Dark's car was found abandoned on an empty parking lot in New Salem, Illinois. Dark's body was discovered two weeks later in a well outside Pittsfield, Illinois.

There was extensive testimony concerning the days following September 5. Several witnesses testified that they saw blood stains on Randy Daugherty's clothes during this time. One witness testified that he had helped Daugherty and the defendant try to retrieve Dark's car from New Salem on September 6. He testified that he saw Daugherty and the defendant take a sack containing a bloody sweater and two pairs of bloody pants from the car after they had failed to get the car started.

Approximately two weeks later, the defendant led police to a well where Dark's body was found. The defendant then took the police to a bridge over a creek bed where they found a lock blade knife with blood on the handle. A pathologist testified that Dark's body had five stab wounds but that only one of the wounds was the cause of death. The wounds which he found on Dark's body were consistent with the blade of the knife the police had found. There was no evidence concerning the actual stabbing of Dark since neither defendant took the stand.

The jury was instructed on two theories of guilt—as either a *principal* or as an *accomplice*—and returned general verdicts of guilty of murder and armed robbery against both defendants. Hargis raises

several grounds which he urges require reversal of the verdict.

## SUFFICIENCY OF THE EVIDENCE

▉ Hargis asserts—and the State agrees—that since there was no direct evidence that the defendant actually struck the fatal blow, the only appropriate basis for a verdict of guilty was a theory of accountability as defined in section 5—2 of the Criminal Code of 1961. (Ill. Rev. Stat. 1981, ch. 38, par. 5—2.) The pertinent portion of this statute requires:

> "A person is legally accountable for the conduct of another when:
>
> * * *
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

The point of contention is that the evidence as adduced was insufficient to prove beyond a reasonable doubt a prior or contemporaneous agreement or action in furtherance of the offense as required by the statute.

▉ In this appeal, the State rests primarily on *People v. Thicksten* (1958), 14 Ill. 2d 132, 150 N.E.2d 813. The defendant does not respond to the State's argument revolving around this case. In *Thicksten*, three men, all previously acquainted with one another, were drinking and conversing in a bar. They left together in a car owned by one of the men and began driving along a highway in a rural county. After driving some distance, they pulled off onto a gravel road and stopped so that they could relieve themselves. Without warning, one of the men, the owner of the car, was struck down. The other two left the scene in possession of the victim's car and the contents of his billfold. They were later arrested, charged with robbery, and tried generally to a jury, neither defendant testifying. The jury returned verdicts of guilty following by separate appeals. One defendant claimed on appeal that he was not proved guilty beyond a reasonable doubt because the evidence showed neither that he had delivered the actual blow nor that he had engaged in a common scheme with his codefendant. The Illinois Supreme Court found the argument to be without merit, saying:

> "There is more shown by this evidence than mere presence at the scene of the robbery and a negative acquiescence therein. Plaintiff in error was closely associated with Bevard [his codefendant] immediately before and after the crime, as well as at

the time it was committed. No other person except the victim was in the vicinity at that time, and plaintiff in error left Applewhite lying unconscious in the ditch and accompanied Bevard to a tavern, where they bought drinks for the house, and then went on together to a restaurant. There is no evidence showing an attempt upon his part to notify authorities or anyone else of the event, nor is there anything to show he was prevented from doing so. In the absence of explanation, such conduct is not consistent with that of an innocent person similarly situated, and is sufficient to support an inference that a common understanding or design existed between Bevard and plaintiff in error." (14 Ill. 2d 132, 134, 150 N.E.2d 813, 815.)

The similarities between *Thicksten* and this case are striking. Here, as in *Thicksten*, defendant and Daugherty were closely associated before, during, and after the crime. Similarly, defendant here did not immediately notify the police or show why he failed to do so. Defendant took the police to the places where the body and the murder weapon had been secreted, but not until two weeks had elapsed. There was testimony that the body could not have been placed in the well by one person, indicating that both parties participated in trying to cover up the crime, behavior hardly associated with an innocent party. Faced with such similarities, we find *Thicksten* controlling precedent and dispositive of the issue of reasonable doubt in this case. Defendant's conviction must stand against this claim.

■■■ Defendant also offered several cases in support of his position that his behavior was inconsistent with his guilt. In *People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904, the court held that evidence must prove beyond a reasonable doubt that the defendant's participation was with the concurrent, specific intent to promote or facilitate the commission of the offense. *Tillman* is readily distinguishable on its facts as one where the defendant did not assent to the commission of a crime and actively voiced his opposition and sought to withdraw. At one point, the defendant in *Tillman* dissuaded other parties from committing an unrelated crime. No such evidence was adduced in the case before the court. The dissent in *Tillman* would have upheld the conviction based on the principle of voluntary attachment to a venture with the knowledge of proposed illegal acts.

■■■ As a second line of defense, the defendant also asserts that where all of the evidence in a homicide case is circumstantial, the defendant's guilt must be so thoroughly established as to exclude every reasonable hypothesis of innocence. This principle, taken from the second paragraph of Illinois Pattern Jury Instruction, Criminal,

No. 3.02 (2d ed. 1981), has appeared in several appellate court decisions and at least two decisions of the Supreme Court of Illinois. In each case, the principal at work seems to be that the evidence adduced at trial openly controverted the State's theory of the case. In this manner, it did not exclude a reasonable hypothesis of innocence as suggested at trial. In other words, the evidence as adduced suggested that one hypothesis of innocence was reasonable. In no case has any court said that the facts must be such as to exclude all imaginable situations wherein the defendant might possibly be innocent.

In *People v. Lewellen* (1969), 43 Ill. 2d 74, 250 N.E.2d 651, there was testimony, albeit contradictory, concerning physical abuse of the defendant by the victim prior to his death. This created the possibility of self-defense. Further, the defendant had given numerous other versions of the events leading up to her husband's death, all so contradictory as to make her testimony virtually nonprobative. This left as the only proof of guilt the bare fact that she drove around in her car with her husband after he was dead. This alone was insufficient to prove any criminal conduct on her part.

In a similar vein is *People v. Garrett* (1975), 62 Ill. 2d 151, 339 N.E.2d 753, wherein the court upon a review of all the evidence found that the evidence supported a theory of suicide. At trial, the evidence showed that the victim had a bloody splashback on his hand and that the victim's cranial condition was indicative of a contact wound through the roof of the mouth rather than a homicide as postulated by the State. Under these facts, the court held that homicide had not been proved beyond a reasonable doubt since the actual evidence at trial supported a theory of suicide equally as well as a theory of murder.

The appellate court cases cited by defendant are also readily distinguished. In *People v. Manley* (1971), 1 Ill. App. 3d 693, 274 N.E.2d 373, a codefendant testified that the defendant was not privy to a prior conversation involving the possible commission of a crime, nor was he present at or aware of its commission at the time of perpetration. Here, there was no evidence that the defendant was unaware of plans or perpetration at any time. In *People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 240 N.E.2d 150, the evidence showed that the defendant had armed himself out of fear for his safety and had asked two individuals to accompany him home when he was attacked by the victim on a public way. After fending off the original attack, he became involved with a bystander. During the time that he was fighting with the bystander, one of the individuals who had accompanied the defendant stabbed and killed the victim. Since the defendant was jus-

tified in his conduct during the affray, the intervening offense of his companion could not be attributed to him since there was no evidence from which to infer a prior plan to commit a crime. Here again, there was no proof of circumstances which would excuse or justify the defendant's behavior.

In *People v. Ramirez* (1968), 93 Ill. App. 2d 404, 236 N.E.2d 284, the court found that there was nothing in the record which affirmatively established that the victim was even alive at any time that the defendant was present. Therefore, the State failed to prove that anything the defendant did could have possibly led to the victim's death. In the instant case, Dark was unquestionably alive the last time he was seen with the defendants and was never seen alive again.

In *People v. Ware* (1980), 82 Ill. App. 3d 297, 402 N.E.2d 762, the State failed to show the close association of the alleged accomplice and the admitted principal either prior to or immediately after the commission of the crime. Such a state of facts is not at issue in this case.

 █ The State's final response to defendant's argument concerning the burden of disproving all reasonable hypotheses of innocence is that the defendant waived this standard of proof by failing to tender an instruction regarding the State's burden, citing *People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247, and *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233. This novel argument has apparently never been raised before in Illinois and appears to be patently erroneous. Instructions *state* the law, they do not *create* the law. If failure to tender an instruction changed the law as it was to be applied to the facts of a given case, that failure could never be plain error. Failure to tender a proper instruction, coupled with the trial court's failure to give it *sua sponte*, can be plain error. (See, *e.g., People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.) Further, in this case defendant moved for a directed verdict following the State's case. The motion was denied. From this denial it may be inferred that the trial judge was of the opinion that the State had satisfactorily disproved all reasonable hypotheses of innocence.

Finally, the two cases cited by the State do not speak to the standard of proof to be applied by a court of appeal reviewing the sufficiency of the evidence adduced at trial. Both go to the issue of waiver in terms of whether the jury was properly instructed at trial. As such, the cases are not on point and this argument by the State must fail.

In conclusion, based on the precedent of *Thicksten*, the defendant was proved guilty beyond a reasonable doubt of the offenses charged.

SEVERANCE

 Hargis contends the trial court erred in denying his motion to have his trial severed from Daugherty's, his codefendant. Prior to the trial, the defendant had moved for this severance because his codefendant had made an exculpatory statement which implicated the defendant in the crime. He felt that under these circumstances their defenses were so antagonistic that a fair trial could not be had with both defendants present. Defendants' motions alleged:

> "15. That their defenses, through investigation, have been found to be so antagonistic as to result in an unfair and prejudicial trial if they were tried together.
>
> 16. That the confession of Randy Daugherty, codefendant, is so highly incriminating as to defendant that it would be impossible for defendant Eddie Hargis to obtain a fair trial if tried with codefendant."

At the hearing on this motion, defense counsel indicated that he could not describe a specific prejudice which would result from a joint trial because the State had not fully complied with discovery, but indicated his belief that each defendant would try to shift the blame to the other. The trial court stated that based on his participation in the preliminary hearing he realized that each defendant would attempt to blame the other. The State then vowed not to use "any statement made by either defendant Mr. Daugherty or *** Mr. Hargis in this case." The court explained that it understood this to mean that "no statements, admissions, or confessions, if any, of the defendants would be presented." Following further clarification, the court ruled that by virtue of the State's avowal not to use any statements made by either of the defendants to police officers, "the matter concerning severance is moot." After further discussion, the motion for severance was denied.

During the trial, the State circuitously elicited testimony concerning numerous conversations made by both defendants, all over objection. None of the contents of the conversations were ever placed before the jury. The defendant complains that the trial court's denial of severance was an abuse of discretion.

In our opinion the trial court did not abuse its discretion in denying the defendant's motion to sever since the defendant's motion lacked the specificity necessary to allow the court to properly make its ruling. An accused does not have a right to be tried separately from his companions when charged with offenses arising out of a common occurrence. The question is one left largely to the discretion of the trial court. The primary question is whether the defenses of the

defendants are so antagonistic that they cannot receive a fair trial unless a severance is granted. *People v. Ruiz* (1982), 94 Ill. 2d 245, 447 N.E.2d 148.

The Illinois Supreme Court in *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461, indicated that there are at least two possible sources of prejudice where a joint trial is had. These include the use of inculpatory statements made by codefendants in violation of *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, and the possibility that the trial will become a contest between defendants as opposed to a contest between the State and the defendants. Such a state of affairs was condemned in *People v. Braune* (1936), 363 Ill. 551, 2 N.E.2d 839.

The American Bar Association Standards for Criminal Justice indicate that one option to severance is an agreement by the State to avoid using codefendants' statements at trial. (ABA Standards for Criminal Justice, Joinder and Severance sec. 13—3.2 (2d ed. 1982).) This option was selected by the trial court in the instant case and removed the first identified source of prejudice (inculpatory statements), since Daugherty's statements blaming the defendant for the crime were not introduced. Further, since neither defendant took the stand, the case did not become a contest between the defendants. *Ergo*, the second possible source of prejudice was also eliminated.

In this case, however, the defendant asserts that a third type of prejudice was present in that he was unable to put on a full defense since he had no way to elicit from the testifying officer that the statement he gave to police prior to leading them to the body and murder weapon inculpated his codefendant. The State does not respond to this argument but takes the position that the trial court exercised sound discretion in its denial of severance based on the pleadings and argument of counsel at the time of its ruling.

Hargis' view that he was denied the opportunity to fully present his case is based on his apparent belief that Randy Daugherty's attorney would have been able to prevent Hargis' attorney from eliciting the contents of Hargis' conversation with the police prior to taking them to the body and the murder weapon. Defendant cites no authority for this proposition, but it is apparently an adjunctive principle taken from *Bruton*. The cases citing *Bruton* generally deal with attempts by the State to introduce statements made by codefendants. Whether *Bruton* would preclude a codefendant from undertaking such an endeavor is unclear although it does raise the specter of the trial becoming a contest between the defendants. Since the State failed to respond to this argument, it is difficult to make a reasoned assess-

ment of its validity. However, our disposition of this issue rests firmly on alternate grounds, and we need not speculate about one defendant's right to successfully make *Bruton* objections to prevent a codefendant from fully explaining statements which are introduced against his interest.

■■ The State's position that the trial court's ruling was an exercise of sound discretion is well taken. In *People v. Lee* (1981), 87 Ill. 2d 182, 186, 429 N.E.2d 461, 463, the trial court, in denying a motion to sever, admitted that there was a " 'possibility' of adverse testimony" based on the defendant's claim that a codefendant had made statements which the State would use against his client and that his codefendant's defenses were antagonistic to his. The supreme court upheld the denial of the severance. In doing so, it mentioned several factors which should be presented by a defendant who is seeking a severance based on antagonistic defenses. The defendant should produce "a detailed recitation of what his defense would be, what the codefendant's defenses would be, and how the two conflicted." (87 Ill. 2d 182, 188, 429 N.E.2d 461, 464.) In the instant case, no such detailed allegations were presented by the defendant. The defendant asserts that the trial court's expression of his knowledge that each defendant would attempt to blame the other was sufficient to show that its representations were adequate to require severance. The trial court's expression in this case is no more unequivocal than the finding of the *Lee* court that adverse testimony was possible. Based on the minimal representations of antagonism proffered by the defendant, the trial court did not abuse its discretion in denying the motion to sever the cases of Edward Hargis and Randy Daugherty.

## INSTRUCTIONS

■■ ■ The defendant argues that the failure to tender and include the second paragraph of IPI Criminal No. 3.02 constituted either reversible error or ineffective assistance of counsel.

### A. REVERSIBLE ERROR

Hargis contends that since the proof of his guilt was entirely circumstantial, the jury should have been instructed with both paragraphs of IPI Criminal No. 3.02. Only the first paragraph was given. IPI Criminal No. 3.02 reads in its entirety:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of a defendant. Circumstantial evidence should be considered by you together with

all the other evidence in the case in arriving at your verdict. You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence." (IPI Criminal No. 3.02, at 18 (2d ed. 1981).)

The State responds that since defense counsel did not tender the second paragraph, any objection to its exclusion is waived, and in the alternative that the evidence of guilt was not wholly circumstantial so the instruction was rendered superfluous.

### 1. WAIVER

The general rule is that no party may raise on appeal the failure to give an instruction unless he shall have tendered it. (See Supreme Court Rule 366(b)(2)(i) (87 Ill. 2d R. 366(b)(2)(i)).) In criminal cases, the waiver rule is not absolute and will not prevent a review of substantial defects in jury instructions if the interests of justice require. (*People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513.) The issue here is whether the omission of the second paragraph of IPI Criminal No. 3.02 resulted in such fundamental unfairness as to abrogate the waiver rule. We do not believe that it did.

■■ The defendant in this case failed to present any evidence whatsoever from which a jury might have found a reasonable theory of innocence. The theory of defendant Hargis was that he was simply a witness to a murder, then helped dispose of the body, rode around for the rest of the night in the decedent's car, then two weeks later led the police to the body and the murder weapon. The triers of fact were well aware that there was no testimony concerning who struck the fatal blow but nonetheless found the defendant guilty of murder. They had been instructed that the burden of proof was beyond a reasonable doubt and so found. Here, the second paragraph of IPI Criminal No. 3.02 would have added nothing to the defendant's case. The instruction was not tendered. Any belated objections to its omission are deemed waived. This position is supported by the discretionary language of the comments to 3.02 which indicates that the instruction *should be given* when the proof of guilt is entirely circumstantial but does not state that the instruction *must be given* when the proof is so.

■■ Along these same lines, the State buttresses its argument by arguing that even if this court decides to consider the ommission of the second paragraph of IPI Criminal No. 3.02 plain error, the error cannot result in a reversal since it cannot be shown that its inclusion would have affected the verdict in any substantial manner. (See *People v. Garcia* (1981), 95 Ill. App. 3d 792, 420 N.E.2d 482.) The defendant agrees with this position. In the instant case, the defendant

offered no reasonable theory of innocence consistent with the evidence. Under these circumstances, it is extremely unlikely that including the second paragraph of IPI Criminal No. 3.02 would have had any effect on the verdict. Therefore, its exclusion, even if error, was not reversible.

### 2. CIRCUMSTANTIAL EVIDENCE

The State also argues that in this case the evidence was not entirely circumstantial since the proof included proof of *corpus delecti*. This argument seems to miss the point of IPI Criminal No. 3.02, which refers specifically to proof of *guilt* as opposed to simply proof of *crime*. If simply proving the existence or occurrence of a crime is enough to preclude giving the second paragraph of IPI Criminal No. 3.02, this paragraph is rendered completely nugatory in homicide cases. In fact, it seems that the State must produce some direct evidence of guilt in order to avoid having the second paragraph given. Simply proving *corpus delecti* is not enough, and this argument fails for that reason.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant argues that counsel's failure to tender the second paragraph of IPI Criminal No. 3.02 rendered his counsel's assistance ineffective. In *People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416, the Illinois Supreme Court established the standard for reviewing claims of ineffective assistance of counsel. Incidents of ineffective assistance of counsel are not reversible unless a defendant suffers substantial prejudice without which the outcome of the trial might well have been different. In the instant case there is little likelihood that instructing the jury that the State's case must disprove all reasonable hypotheses of innocence would have had any effect on the outcome of the trial since the defendant had offered no evidence from which a reasonable hypothesis of innocence might be inferred. Since there is little likelihood that the outcome of the trial would have been different, the failure to tender the instruction cannot be found to be ineffective assistance of counsel.

Consequently, the failure to tender or give the second paragraph of IPI Criminal No. 3.02 was neither ineffective assistance of counsel nor prejudicial error.

### SENTENCING

Hargis raises two issues concerning his sentence. He first argues that the sentence of natural life was improperly imposed based

on the trial court's erroneous determination that he qualified for the death penalty. The defendant also argues that the procedure followed by the trial court was improper in that the trial court denied the defendant the opportunity to review the prior testimony of a witness who testified at his death penalty hearing.

## A. NATURAL LIFE

The State sought the death penalty in this case. Pursuant to section 9—1(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(c)), a separate sentencing hearing was had by the court to determine whether the defendant was eligible for capital punishment. The trial court found that the defendant qualified for the death penalty based on section 9—1(b)(6)(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6)(a)). This was the only factor found by the trial court which led to the sentence of natural life which was imposed under section 5—8—1(a)(1)(b). (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(b).) The court admitted that it could not determine whether Hargis or Daugherty had delivered the fatal blow, but expressed his belief that both men had stabbed the deceased at least once. Under the plain language of section 9—1(b)(6) of the Criminal Code of 1961 as interpreted in *People v. Ruiz* (1982), 94 Ill. 2d 245, 447 N.E.2d 148, the trial court's belief that the death penalty was a possible sentence was error. The statute in effect at the time of sentencing provided:

"(b) A defendant who at the time of the commission of the offense has attained the age of 18 or more and who has been found guilty of murder may be sentenced to death if:
* * *
(6) the murdered individual was killed in the course of another felony if:
(a) the murdered individual was actually killed by the defendant and not by another party to the crime or simply as a consequence of the crime." (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6)(a).)

Since there was no way to know whether Hargis actually killed Dark, Hargis is not eligible for the death penalty under the statute as it existed at the time of sentencing. (The statute has since been amended to provide for the specific instance presented by this case. See, *e.g.,* Ill. Ann. Stat., ch. 38, par. 9—1(b)(6)(a) (Smith-Hurd Supp. 1983).)

The State takes the position that *Ruiz* worked some modification on the express language of the statute. *Ruiz* concerned a defendant who was sentenced to death based on participation as an accomplice

to multiple murders. He argued that the inference from section 9—1(b)(6)(b) was that a person could never be sentenced to death on a theory of accountability since an accomplice was never the person "actually committing the murder." The supreme court correctly rejected this argument, noting in *dicta*:

> "Since the only intent necessary to support a felony-murder conviction is that to commit the underlying felony [citations], the legislature provided that the death penalty can only be imposed upon the one actually doing the killing, to avoid the possibility of a person being put to death without having possessed even the general intent for the crime of murder." (94 Ill. 2d 245, 261, 447 N.E.2d 148, 154.)

The State counterpoints by arguing that in this case there was no possibility that the defendant did not possess the general intent to commit murder. This misses the thrust of the statute, which was to remove from consideration for the death penalty all cases of felony murder wherein a defendant had not actually killed the deceased. This view of the statute is reiterated three times in the supreme court's opinion in *Ruiz*:

> "The trial court properly noted that accountability is not incompatible with the death penalty in cases *other* then felony murders." (Emphasis added.) (94 Ill. 2d 245, 261, 447 N.E.2d 148, 154.)

> "As noted earlier, under our statute, *the death penalty will not be imposed where a defendant is convicted of felony murder unless he performed the acts which resulted in death.* This limitation insures that an inference of at least the general intent sufficient to support a murder conviction will be present before someone is put to death for felony murder." (Emphasis added.) (94 Ill. 2d 245, 263, 447 N.E.2d 148, 155.)

> "We noted above in this opinion that, under our statute, *the death penalty cannot be imposed for felony murder unless the defendant actually kills the victim.*" (Emphasis added.) 94 Ill. 2d 245, 269, 447 N.E.2d 148, 158.

Under this view of the statute, the trial court in this case erroneously believed that Hargis was subject to the death penalty.

Both parties have also joined issue concerning the subsequent amendment of the statute to expressly cover cases such as that before the court and how the amendment should apply to this case. Both agree that the amendment shows legislative intent to make a substantive change in the prior law. The State takes the position that since the statute took effect two days before *Ruiz* was announced, the su-

preme court viewed the new statute as a special interpretive statute which clarified rather than changed existing law. In support of this inference they cite Sutherland. (1A Sutherland, Statutes and Statutory Construction sec. 27.04, at 313 (4th ed. 1972).) However, the opinion in *Ruiz* does not at any point speak to the change in legislation and any inference drawn from its failure to do so is speculation into which we refuse to be drawn. Suffice it to say that the trial court erred in finding that the defendant was eligible for the death penalty under section 9—1(b)(6) of the Criminal Code (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6)) as it was written at the time of sentencing.

 ██ The belief of the trial court that the death penalty was appropriate requires resentencing. This court in *People v. Marquis* (1977), 54 Ill. App. 3d 209, 369 N.E.2d 372, held that where a trial court might have imposed a sentence based on an erroneous belief in the maximum possible sentence, the case should be remanded for resentencing. *Marquis* involved judicial misapprehension concerning whether the crime of fleeing or eluding a police officer was a Class A or B misdemeanor. The court erroneously believed it to be a Class A misdemeanor and sentenced the defendant to a term (90 days) which was less than the maximum sentence for the crime if it had been properly classified (six months). Nonetheless, this court overturned the verdict relying on *People v. Brooks* (1977), 51 Ill. App. 3d 800, 367 N.E.2d 236. In this case, the trial court believed that defendant could have been sentenced to death. Nonetheless, the trial court sentenced him to natural life. Under the rationale of *Marquis* this case must be remanded for resentencing under the proper guidelines.

Our disposition of this issue renders moot the defendant's final argument concerning the propriety of a natural life sentence even if the trial court had been correct in its determination that the death sentence was appropriate.

 This leaves one final issue for resolution.

### B. SENTENCING PROCEDURE

Hargis asserts that the trial court committed reversible error by refusing to provide him with a transcript of testimony given by a witness at a prior death penalty hearing in an unrelated case. The State called Diane Stephenson as part of the death penalty hearing in this case. Miss Stephenson testified to the contents of a conversation she had had with the defendants concerning the possibility of committing a crime against a third party, not involved in this case. Miss Stephenson had given basically the same testimony at a prior death penalty hearing on a separate charge involving the codefendant here. The co-

defendant's attorney requested a transcript of this testimony at which time the State tendered a copy of the Stephenson testimony at what he termed a "preliminary hearing." At this point the cause was adjourned to the following day. On the following day, the defendant's attorney requested a copy of the transcript but the request was denied.

From the record in this case as transcribed, there is no way to tell what document the State tendered codefendant's counsel. In this appeal the State has asserted that it most likely was not a transcript of a "preliminary hearing" since the witness' testimony in no way went to probable cause to arrest codefendant. In the State's view it was much more likely that codefendant's attorney had received what he had asked for, a copy of the witness' testimony at codefendant's death penalty hearing. The defendant argues that regardless of what codefendant's attorney received, it was error to deny him the same documents since it precluded her impeachment at the hearing. The defendant further argues that since he was indigent, the error is one of constitutional proportions.

Both *People v. Delafosse* (1967), 36 Ill. 2d 327, 223 N.E.2d 125, and *People v. Miller* (1966), 35 Ill. 2d 615, 221 N.E.2d 653, hold it to be a violation of due process and equal protection to deny an indigent defendant the transcripts of prior trials involving the same defendant on the same charges. The instant case involves a sentencing hearing rather than a trial. The case also involves a transcript of a trial on different charges. The extent to which constitutional protections afforded an accused at trial extend to the sentencing hearing is unclear. There are no cases either condoning or condemning the conduct in this case. Since there are no precedents on which to rely, we must engage in analysis to come to the determination on this issue.

▆▆▆ One scholar/jurist has suggested a cost/benefit type analysis as appropriate in determining the propriety of suggested criminal procedures, noting that the United States Supreme Court has apparently adopted this approach in the area of administrative hearing procedures in *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893. (See R. Posner, Economic Analysis of Law sec. 21.1, at 429 (2d ed. 1977).) The approach calls for a two-pronged inquiry. The first prong asks two questions. First, how is the probability of error to be affected by the requested protection? Second, what is the cost of the error if it occurs? When the stakes of a given case are high, the cost of error will be high also. If the probability of error is high, the total error cost will be remarkably high. Under these circumstances, the inquiry goes on to the second prong which calls upon the court to measure the cost of providing the requested protection. If that cost is

low, the protection should be afforded. In this case, the death penalty is a very high stakes matter, and impeachment will be impossible without the transcript. So the total cost of error was very high while the cost of providing the transcript was low. Based on this analysis, denying the defendant the transcript was error.

██ While under this economic theory analysis the denial was error, it must be determined whether the error prejudiced the defendant to the extent that it requires a remand. We do not believe that it does. The various inconsistencies upon which the witness could have been impeached do not really go to the question of whether or not the defendants engaged in preparatory haggling over the commission of a future crime. Rather, the discrepancies are over minor details concerning the various discussions. Viewed as a whole, the two accounts tend to resemble what any person might recall about an off-the-cuff conversation when asked to recount it twice over the ensuing year. If anything, the discrepancies tend to bolster the fact that the witness was, on both occasions, recalling the conversations to the best of her ability. In this light, there was no substantial prejudice which requires another sentencing hearing on this ground.

██ The State has advanced one final and novel argument pertaining to the sentencing process which we deem to be void of merit. The State contends that the defendant had a duty to file a written motion for a new sentencing hearing in order to preserve possible sentencing errors for review. The argument of the State is that since a defendant must file a written motion for a new trial to preserve its objections to trial errors, it must by analogy also file a written motion for a new sentencing hearing to preserve its objections to sentencing errors. It offers no authority for this proposition.

Even were we convinced that such post-sentencing motions were desirable, it would seem particularly harsh to refuse to review the sentencing errors in this case since the defendant's attorney had no notice that such a procedure might be required. Furthermore, this court has no rule-making authority and, as such, feels constrained to refuse to change a rule that affects the basic machinations of the criminal justice system. A far better forum for such a sweeping change in the system would be either the supreme court or the legislature. As such, we find that the defendant was under no duty to file a post-sentencing motion asking for a new sentencing hearing to preserve errors which he alleges occurred at that point.

## ADDENDUM

██ Following oral arguments, defendant's attorney requested

and received permission to file a supplemental brief in this cause. In his brief he asks this court to review the posture of our supreme court in reviewing claims that questioning prospective jurors about their ability to render a sentence of death when faced with appropriate circumstances somehow taints the entire jury selection process.

This argument was rejected by the supreme court in *People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346. In *Lewis,* the court noted that sources offered by the defendant in support of this position were inconclusive and based on incomplete samples. In defendant's view, additional information is now available which overcomes the previous dearth. The two cases and two articles offered here do support defendant's position but do not change the fact that we are constrained to apply the law as enunciated by our supreme court. The *Lewis* case has not been overruled or altered. As such, it must control the outcome of this case. We hold that propounding questions to a venire concerning their ability to return a verdict of death under the proper circumstances does not taint the jury which is eventually impaneled. No error.

In conclusion, the defendant's conviction of armed robbery and murder must stand. The defendant is entitled to a new sentencing hearing, and therefore we vacate the sentence and remand the case to the circuit court for further proceedings consistent with this opinion.

Affirmed in part, vacated in part and remanded for resentencing.

WEBBER, P.J., and GREEN, J., concur.